### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **CENTERSQUARE INVESTMENT MANAGEMENT LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **DAWN ACQUISITIONS, LLC,** <br><br> Defendant. | **CIVIL ACTION NO. 3:24-cv-2172** <br><br> **JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT

Plaintiff CenterSquare Investment Management LLC ("CenterSquare") respectfully files this Complaint and alleges the following against Dawn Acquisitions, LLC ("Dawn"):

#### INTRODUCTION

1. This is an action for the unlawful and intentional infringement of CenterSquare's federally registered trademark, U.S. Reg. No. 4668254, under 15 U.S.C. § 1114; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); cybersquatting under 15 U.S.C. § 1125(d); and trademark infringement and unfair competition under the Texas common law.

2. CenterSquare brings this lawsuit to protect the substantial goodwill that it has developed over the past eleven years in its distinctive CENTERSQUARE word mark. CenterSquare's federally registered trademark has gained a reputation as being a source of high-quality real estate investment management services.

3. The goodwill and reputation for quality that CenterSquare has worked so hard to cultivate are threatened by Dawn's actions. In early 2024, Dawn started using and has continued to use its CENTERSQUARE mark, which is substantially identical to CenterSquare's

CENTERSQUARE word mark, to sell services and seeks to service the same investors served by CenterSquare. Unless Dawn is enjoined from using its CENTERSQUARE mark, such use will continue to cause consumer confusion and will cause irreparable harm to CenterSquare.

4. This action seeks injunctive relief, damages, and other appropriate relief arising from Dawn's willful acts of trademark infringement and unfair competition.

## THE PARTIES

5. CenterSquare is a limited liability company formed under the laws of Delaware with a principal place of business at Eight Tower Bridge, 161 Washington Street, Seventh Floor, Conshohocken, PA 19428.

6. Upon information and belief, Dawn Acquisitions, LLC is a limited liability company formed under the laws of Delaware with a principal place of business at 3100 Olympus Blvd., Suite 510, Coppell, Texas 75109.

## JURISDICTION AND VENUE

7. This is an action for infringement of a federally registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), for unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and for violation of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)).

8. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves claims arising under the federal Lanham Act.

9. This Court has supplemental jurisdiction over CenterSquare's state law claims under 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Dawn. Upon information and belief, Dawn's principal place of business is located within this District, and acts of infringement of

CenterSquare's registered mark were committed within the jurisdiction of this Court. Dawn has advertised and rendered its services under the infringing mark in this state and has transacted business by advertising its services within this state to the public under the infringing mark. Dawn has engaged in substantial activity within Texas and this judicial district and has had substantial contacts there, having purposefully availed itself of the privilege of conducting activities in the forum. Dawn has caused injury to CenterSquare within Texas and within this judicial district.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Dawn may be found or transacts business in this district and a substantial part of the events giving rise to CenterSquare's claims occurred and are continuing to occur in this district.

## FACTUAL BACKGROUND

### A.  CENTERSQUARE AND ITS CENTERSQUARE TRADEMARK RIGHTS

12.     Since at least as early as July 2013, CenterSquare has used both the CENTERSQUARE INVESTMENT MANAGEMENT and CENTERSQUARE marks in connection with real estate asset management and investment services, including investment in data centers. Data centers are widely recognized as a large and growing subset of real estate, with CenterSquare commencing its investment activities in this real estate asset class as early as 2004. Data centers are widely included in real estate indices, institutional real estate portfolios (including that of CenterSquare and its competitors) and in real estate research.

13.     In addition to its strong common law rights in and to its trademarks, CenterSquare is the owner of an incontestable federal trademark registration, Reg. No., 4668254, for CENTERSQUARE INVESTMENT MANAGEMENT for "financial and investment advisory services; asset management services, namely, real estate asset management and investment services." A copy of this registration is attached as Exhibit 1. This registration constitutes prima

facie evidence of the validity of the registered trademark and of the registration of the CENTERSQUARE INVESTMENT MANAGEMENT trademark, of the CenterSquare's ownership of the trademark, and of the CenterSquare's exclusive right to use the registered CENTERSQUARE INVESTMENT MANAGEMENT trademark in commerce on or in connection with the identified goods and services. 15 U.S.C. § 1115(a).

14.     CenterSquare has also invested in data centers and colocation centers since at least 2004, and actively advertises its participation in such investments. Colocation centers are widely owned in CenterSquare's portfolio and are indistinguishable from other forms of real estate, as they are "for lease" rentals of data centers, and the leasing of space is the fundamental operating activity of real estate in order to generate value.

15.     CenterSquare's services are offered throughout the United States and are well known in the real estate asset management and investment services community. On information and belief, CenterSquare's clients are the same and/or significantly overlap with the clients of Dawn Acquisitions and its parent, Brookfield Properties.

16.     CenterSquare has invested substantial time, effort, and financial resources promoting its CENTERSQUARE mark in connection with the marketing and sale of its services in interstate commerce. The CENTERSQUARE mark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of CenterSquare, its quality services, and its goodwill. The consuming public recognizes the CENTERSQUARE trademark and associates it with CenterSquare.

**B.  DAWN AND ITS INFRINGING ACTIVITY**

17.     Long after CenterSquare's adoption and use of the distinctive CENTERSQUARE trademark, Dawn, without authorization, began using the CENTERSQUARE trademark, as well

as confusingly similar variations of the trademark, in commerce in connection with Dawn's related goods and services. Dawn continues to use the infringing CENTERSQUARE marks, including, but not limited to the advertising and marketing of its goods and services.

18. On February 27, 2024, Dawn submitted to the United States Patent and Trademark Office ("USPTO") an intent-to-use application to register CENTERSQUARE as a trademark for colocation and data center services, Serial No. 98423593.

19. Dawn's services (colocation and data center services) are closely related to CenterSquare's real estate investment advisory services, particularly with regard to CenterSquare's investments in data centers and competition for clients. Dawn is marketing its services nationwide and also using the domain name centersquaredc.com.

20. Furthermore, Dawn's parent company, Brookfield Office Properties, Inc., is also a direct competitor of CenterSquare in the real estate investment market and is well aware of CenterSquare and its activities and reputation for real estate asset management and investment services, and its long-term involvement in data center investments.

21. On April 22, 2024, CenterSquare requested in writing that Dawn cease and desist from its infringing actions, but Dawn has refused these requests and has failed to comply with them. CenterSquare's further communications to Dawn had the same result.

22. CenterSquare has already been the recipient of in-bound communications indicative of the substantial confusion that has been caused by Dawn's actions in the marketplace.

### COUNT I: FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

23. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

24. CenterSquare is the owner of an incontestable federal trademark registration for CENTERSQUARE INVESTMENT MANAGEMENT. Reg. No. 4668254. *See* Exhibit 1. CenterSquare's registered trademark is distinctive and has become associated in the public mind with CenterSquare's goods and services. CenterSquare's registered trademark is valid and enforceable.

25. Notwithstanding CenterSquare's established prior rights in the CENTERSQUARE trademark, upon information and belief, Dawn started using used the substantially identical trademark CENTERSQUARE in interstate commerce in connection with the offering of colocation and data center services in approximately April 2024.

26. Without CenterSquare's consent, Dawn has used and continues to use the infringing CENTERSQUARE mark in connection with the sale, offering for sale, distribution, or advertising of its services.

27. Dawn has engaged in its infringing activity despite having constructive notice of CenterSquare's federal registration rights under 15 U.S.C. § 1072 and despite having actual knowledge of CenterSquare's use of the CENTERSQUARE mark.

28. Dawn's actions are likely to mislead the public into concluding that its services originate with or are authorized by CenterSquare, which will damage both CenterSquare and the public. CenterSquare has no control over the quality of services provided by Dawn and because of the source confusion caused by Dawn, CenterSquare has lost control over its valuable goodwill.

29. Upon information and belief, Dawn has advertised and offered its goods for sale using the CENTERSQUARE mark with the intention of misleading, deceiving, or confusing consumers as to the origin of its goods and of trading on CenterSquare's reputation and goodwill.

Dawn's use of its CENTERSQUARE mark constitutes willful, deliberate, and intentional trademark infringement.

30. Dawn's unauthorized use of the CENTERSQUARE mark in interstate commerce as described above constitutes trademark infringement under 15 U.S.C. § 1114(1) and has caused and is likely to continue to cause consumer confusion, mistake, or deception.

31. As a direct and proximate result of Dawn's trademark infringement, CenterSquare has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Dawn has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

32. Dawn's acts of infringement will cause further irreparable injury to CenterSquare if Dawn is not restrained by this Court from further violation of CenterSquare's rights. CenterSquare has no adequate remedy at law.

33. Dawn's infringement is willful, and for this reason and others, this matter should be deemed an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling CenterSquare to attorneys' fees and costs.

34. CenterSquare is entitled to, among other relief, injunctive relief and an award of actual damages, Dawn's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action pursuant to 15 U.S.C. §§ 1114, 1116, and 1117, together with prejudgment and post-judgment interest.

### COUNT II: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

36. CenterSquare alleges federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

37. Dawn's unauthorized marketing and sale of its products in interstate commerce using its CENTERSQUARE mark constitutes use of a false designation of origin or false representation that wrongfully and falsely designates Dawn's services as originating from, connected with, approved of, or sponsored by CenterSquare and constitutes the use of false descriptions or representations in interstate commerce. The actions of Dawn as alleged herein constitute intentional, willful, knowing, and deliberate unfair competition. For this reason and others, this matter should be deemed an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to attorneys' fees and costs.

38. As a direct and proximate result of Dawn's unfair competition, CenterSquare has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Dawn has and will continue to unfairly acquire income, profits, and goodwill.

39. Dawn's acts of unfair competition will cause further irreparable injury to CenterSquare if Dawn is not restrained by this Court from further violation of CenterSquare's rights. CenterSquare has no adequate remedy at law.

### COUNT III: Anti-Cybersquatting Piracy Act (15 U.S.C. § 1125(d))

40. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

41. The ACPA prohibits bad faith registration, trafficking, or use of a domain name that is "identical or confusingly similar to" a trademark that is "distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d).

42. CenterSquare's is the owner of the CENTERSQUARE trademark, which is inherently distinctive.

43. When Dawn registered the centersquaredc.com domain name, CenterSquare's CENTERSQUARE trademark was a valid, distinctive trademark.

44. Dawn registered, trafficked in, or used the centersquaredc.com domain name that is nearly identical or confusingly similar to CenterSquare's trademark.

45. As shown above, Dawn's conduct demonstrates that it had a bad faith intent to profit from CenterSquare's trademark.

46. Dawn's registration and use of the centersquaredc.com domain name is likely to cause confusion, to cause mistake, and to deceive as to the origin, source, or sponsorship of the infringing domain name among the public.

47. Because of Dawn's cybersquatting, CenterSquare suffered and continues to suffer damage and injury to its business, reputation, and goodwill, with a loss of revenues and profits, in an amount yet to be determined and subject to a treble damages award pursuant to 15 U.S.C. § 1117(a).

48. Alternatively, Dawn's actions justify an award of statutory damages in an amount of $100,000 pursuant to 15 U.S.C. § 1117(d).

49. Dawn engaged in these activities knowingly, willfully, and deliberately. This is an exceptional case, which justifies an award of CenterSquare's attorneys' fees and costs.

### COUNT IV: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF TEXAS COMMON LAW

50. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

51. CenterSquare has a valid, legally protectable interest in the CENTERSQUARE marks. As described above, CenterSquare owns common law rights in and to the distinctive

CENTERSQUARE trademarks, which significantly predate any use of the CENTERSQUARE mark by Dawn.

52. Dawn used CenterSquare's CENTERSQUARE trademark in commerce in Texas in connection with its goods and services.

53. Dawn did not have CenterSquare's consent, permission, or license to use CenterSquare's trademarks, and Dawn's use is likely to cause confusion, to cause mistake, and to deceive as to the origin or source of Dawn's good and services, and/or to cause consumers to mistakenly believe that Dawn's goods and services are part of, or sponsored, endorsed, or approved by, or otherwise affiliated with CenterSquare.

54. As a direct and proximate result of Dawn's willful trademark infringement and unfair competition, CenterSquare has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Dawn has and will continue to unfairly acquire income, profits, and goodwill.

55. The foregoing acts constitute trademark infringement and unfair competition in violation of Texas common law, and such acts have caused, and will continue to cause, CenterSquare to suffer damages.

56. Dawn's acts of unfair competition will cause further irreparable injury to CenterSquare if Dawn is not restrained by this Court from further violation of CenterSquare's rights. CenterSquare has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, CenterSquare prays for the following relief:

A. Entering judgment in favor of CenterSquare on all causes of action set forth herein;

B. Entering a judgment that CenterSquare's registered CENTERSQUARE trademark has been and continues to be infringed by Dawn in violation of 15 U.S.C. § 1114(1);

C. Entering a judgment that Dawn's use of its CENTERSQUARE trademark constitutes federal unfair competition in violation of 15 U.S.C. § 1125(a);

D. Entering a judgment that Dawn violated the ACPA, 15 U.S.C. § 1125(d);

E. Entering a judgment that Dawn's use of its CENTERSQUARE trademark constitutes trademark infringement and unfair competition in violation of Texas common law;

F. Permanently enjoining and restraining Dawn and each of its agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them from using the trademark CENTERSQUARE, with or without its accompanying logo or any other designation, alone or in combination with other words or symbols, as a trademark or trade name component or otherwise, to market, advertise, distribute, or identify Dawn's products where that designation would create a likelihood of confusion, mistake or deception with CenterSquare's CENTERSQUARE mark;

G. Pursuant to 15 U.S.C. § 1116(a), directing Dawn to file with the Court and serve on CenterSquare within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Dawn has complied with the injunction;

H. Pursuant to 15 U.S.C. § 1118, requiring that Dawn and all others acting under Dawn's authority, at their cost, be required to deliver up and destroy all devices,

literature, advertising, labels, and other material in their possession bearing the infringing designation;

I. Pursuant to 15 U.S.C. § 1119, enjoining the Director of the United States Patent and Trademark Office from issuing to Dawn any trademark registration for its CENTERSQUARE mark or any combination of words or symbols that would create a likelihood of confusion, mistake, or deception with CenterSquare's mark, including, but not limited to, Serial No. 98423593, or ordering cancellation of any such registrations previously granted to Dawn;

J. Ordering Dawn to transfer the centersquaredc.com domain name to CenterSquare;

K. Awarding CenterSquare statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d), if elected;

L. Awarding CenterSquare all damages it sustained as the result of Dawn's acts of infringement and unfair competition, said amount to be trebled, together with prejudgment interest, pursuant to 15 U.S.C. § 1117;

M. Awarding CenterSquare all profits received by Dawn from sales and revenues of any kind made as a result of its willful and intentional infringing actions, said amount to be trebled, after an accounting, pursuant to 15 U.S.C. § 1117;

N. Declaring that this is an "exceptional" case under the Lanham Act and awarding CenterSquare its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and;

O. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

CenterSquare demands a jury trial of all issues so triable.

Dated: August 23, 2024.

**CM LAW PLLC**

/s/ Mishell B. Kneeland
Mishell B. Kneeland
Texas Bar No. 24038256
National Litigation Support Center
13101 Preston Rd. Ste. 110-1510
Dallas, Texas 75240

mkneeland@cm.law
(512) 910-5463

*Attorneys for Plaintiff*
*CenterSquare Investment Management LLC*

# Exhibit 1



# CENTERSQUARE INVESTMENT MANAGEMENT

**Reg. No. 4,668,254**  
**Registered Jan. 6, 2015**  
**Int. Cl.: 36**  

**SERVICE MARK**  
**PRINCIPAL REGISTER**

THE BANK OF NEW YORK MELLON CORPORATION (DELAWARE CORPORATION)  
ONE WALL STREET  
NEW YORK, NY 10286

FOR: FINANCIAL AND INVESTMENT ADVISORY SERVICES; ASSET MANAGEMENT SERVICES, NAMELY, REAL ESTATE ASSET MANAGEMENT AND INVESTMENT SERVICES, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7-1-2013; IN COMMERCE 7-1-2013.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "INVESTMENT MANAGEMENT", APART FROM THE MARK AS SHOWN.

SN 85-956,623, FILED 6-11-2013.

WANDA KAY PRICE, EXAMINING ATTORNEY



Deputy Director of the United States  
Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

*First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

*Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
*See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

> **The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.