**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **CENTERSQUARE INVESTMENT MANAGEMENT LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**DAWN ACQUISITIONS LLC and PHOENIX DATA CENTER HOLDINGS LLC,**<br><br>    Defendants. | **CIVIL ACTION NO. 3:24-CV-02172-B**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff CenterSquare Investment Management LLC ("CenterSquare") respectfully files this First Amended Complaint and alleges the following against Dawn Acquisitions LLC ("Dawn") and Phoenix Data Center Holdings LLC, ("Phoenix") (collectively "Defendants"):

INTRODUCTION

1. This is an action for the unlawful and intentional infringement of CenterSquare's federally registered trademark, U.S. Reg. No. 4668254, under 15 U.S.C. § 1114; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); cybersquatting under 15 U.S.C. § 1125(d); and trademark infringement and unfair competition under the Texas common law.

2. CenterSquare brings this lawsuit to protect the substantial goodwill that it has developed over the past eleven years in its distinctive CENTERSQUARE word mark. CenterSquare's federally registered trademark has gained a reputation as being a source of high-quality real estate investment management services.

3. The goodwill and reputation for quality that CenterSquare has worked so hard to cultivate are threatened by Dawn's actions. In early 2024, Defendants started using and have continued to use their CENTERSQUARE mark, which is substantially identical to CenterSquare's CENTERSQUARE word mark, to sell services and seeks to service the same investors served by CenterSquare. Unless Defendants are enjoined from using their CENTERSQUARE mark, such use will continue to cause consumer confusion and will cause irreparable harm to CenterSquare.

4. This action seeks injunctive relief, damages, and other appropriate relief arising from Defendants' willful acts of trademark infringement and unfair competition.

## THE PARTIES

5. CenterSquare is a limited liability company formed under the laws of Delaware with a principal place of business at Eight Tower Bridge, 161 Washington Street, Seventh Floor, Conshohocken, PA 19428.

6. Upon information and belief, Dawn Acquisitions LLC is a limited liability company formed under the laws of Delaware with a principal place of business at 3100 Olympus Blvd., Suite 510, Coppell, Texas 75109.

7. Upon information and belief, Phoenix Data Center Holdings LLC is a limited liability company formed under the laws of Delaware with a principal place of business at 3100 Olympus Blvd., Suite 510, Coppell, Texas 75109.

## JURISDICTION AND VENUE

8. This is an action for infringement of a federally registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), for unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and for violation of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)).

9. This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves claims arising under the federal Lanham Act.

10. This Court has supplemental jurisdiction over CenterSquare's state law claims under 28 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendants. Upon information and belief, Defendants' principal place of business is located within this District, and acts of infringement of CenterSquare's registered mark were committed within the jurisdiction of this Court. Defendants have advertised and rendered their services under the infringing mark in this state and have transacted business by advertising their services within this state to the public under the infringing mark. Defendants have engaged in substantial activity within Texas and this judicial district and have had substantial contacts there, having purposefully availed themselves of the privilege of conducting activities in the forum. Defendants have caused injury to CenterSquare within Texas and within this judicial district.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendants may be found or transact business in this district and a substantial part of the events giving rise to CenterSquare's claims occurred and are continuing to occur in this district.

## FACTUAL BACKGROUND

### A. CENTERSQUARE AND ITS CENTERSQUARE TRADEMARK RIGHTS

13. Since at least as early as July 2013, CenterSquare has used both the CENTERSQUARE INVESTMENT MANAGEMENT and CENTERSQUARE marks in connection with real estate asset management and investment services, including investment in data centers. Data centers are widely recognized as a large and growing subset of real estate, with CenterSquare commencing its investment activities in this real estate asset class as early as 2004.

Data centers are widely included in real estate indices, institutional real estate portfolios (including that of CenterSquare and its competitors) and in real estate research.

14. In addition to its strong common law rights in and to its trademarks, CenterSquare is the owner of an incontestable federal trademark registration, Reg. No., 4668254, for CENTERSQUARE INVESTMENT MANAGEMENT for "financial and investment advisory services; asset management services, namely, real estate asset management and investment services." A copy of this registration is attached as Exhibit 1. This registration constitutes prima facie evidence of the validity of the registered trademark and of the registration of the CENTERSQUARE INVESTMENT MANAGEMENT trademark, of the CenterSquare's ownership of the trademark, and of the CenterSquare's exclusive right to use the registered CENTERSQUARE INVESTMENT MANAGEMENT trademark in commerce on or in connection with the identified goods and services. 15 U.S.C. § 1115(a).

15. CenterSquare has also invested in data centers and colocation centers since at least 2004, and actively advertises its participation in such investments. Colocation centers are widely owned in CenterSquare's portfolio and are indistinguishable from other forms of real estate, as they are "for lease" rentals of data centers, and the leasing of space is the fundamental operating activity of real estate in order to generate value.

16. CenterSquare's services are offered throughout the United States and are well known in the real estate asset management and investment services community. On information and belief, CenterSquare's clients are the same and/or significantly overlap with the clients of Defendants and their parent, Brookfield Properties.

17. CenterSquare has invested substantial time, effort, and financial resources promoting its CENTERSQUARE mark in connection with the marketing and sale of its services

in interstate commerce. The CENTERSQUARE mark has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of CenterSquare, its quality services, and its goodwill. The consuming public recognizes the CENTERSQUARE trademark and associates it with CenterSquare.

### B. DEFENDANTS AND THEIR INFRINGING ACTIVITY

18. Long after CenterSquare's adoption and use of the distinctive CENTERSQUARE trademark, Defendants, without authorization, began using the CENTERSQUARE trademark and authorizing third-party licensees to use the trademark, as well as confusingly similar variations of the trademark, in commerce in connection with Defendants' related goods and services. Defendants continue to use the infringing CENTERSQUARE marks, including, but not limited to the advertising and marketing of their goods and services.

19. On February 27, 2024, Dawn submitted to the United States Patent and Trademark Office ("USPTO") an intent-to-use application to register CENTERSQUARE as a trademark for, among other things, colocation and data center services, Serial No. 98423593.

20. On August 22, 2024, Phoenix submitted to the USPTO an intent-to-use application to register CENTERSQUARE DIGITAL EXCHANGE as a trademark for, among other things, data center and colocation services, Ser. No. 98712739.

21. On August 28, 2024, Phoenix also filed with the USPTO an intent-to-use application for CENTER SQUARE and design [CENTER SQUARE logo] as a trademark for, among, other things, data center and colocation services, Ser. No. 98721932.

22. On September 4, 2024, after the filing of this suit, an assignment of trademark application Ser. No. 98423593 was filed with the USPTO, purportedly assigning the

CENTERSQUARE application to Phoenix. The assignment was executed August 22, 2024, but purportedly assigns the mark *nunc pro tunc* as of February 27, 2024, the original filing date.

23. Defendants' services (colocation and data center services) are closely related to CenterSquare's real estate investment advisory services, particularly with regard to CenterSquare's investments in data centers and competition for clients. Defendants are marketing their services nationwide and also using the domain name centersquaredc.com.

24. Furthermore, Defendants parent company, Brookfield Office Properties, Inc., is also a direct competitor of CenterSquare in the real estate investment market and is well aware of CenterSquare and its activities and reputation for real estate asset management and investment services, and its long-term involvement in data center investments.

25. On April 22, 2024, CenterSquare requested in writing that Dawn cease and desist from its infringing actions, but Defendants has refused these requests and have failed to comply with them. CenterSquare's further communications to Defendants had the same result.

26. CenterSquare has already been the recipient of in-bound communications indicative of the substantial confusion that has been caused by Defendants' actions in the marketplace.

### COUNT I: FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

27. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

28. CenterSquare is the owner of an incontestable federal trademark registration for CENTERSQUARE INVESTMENT MANAGEMENT. Reg. No. 4668254. *See* Exhibit 1. CenterSquare's registered trademark is distinctive and has become associated in the public mind

with CenterSquare's goods and services. CenterSquare's registered trademark is valid and enforceable.

29. Notwithstanding CenterSquare's established prior rights in the CENTERSQUARE trademark, upon information and belief, Defendants started using used the substantially identical trademark CENTERSQUARE in interstate commerce in connection with the offering of colocation and data center services in approximately April 2024.

30. Without CenterSquare's consent, Defendants have used and continues to use the infringing CENTERSQUARE mark in connection with the sale, offering for sale, distribution, or advertising of their services.

31. Defendants have engaged in their infringing activity despite having constructive notice of CenterSquare's federal registration rights under 15 U.S.C. § 1072 and despite having actual knowledge of CenterSquare's use of the CENTERSQUARE mark.

32. Defendants' actions are likely to mislead the public into concluding that their services originate with or are authorized by CenterSquare, which will damage both CenterSquare and the public. CenterSquare has no control over the quality of services provided by Defendants and because of the source confusion caused by Defendants, CenterSquare has lost control over its valuable goodwill.

33. Upon information and belief, Defendants have advertised and offered their goods for sale using the CENTERSQUARE mark with the intention of misleading, deceiving, or confusing consumers as to the origin of their goods and of trading on CenterSquare's reputation and goodwill. Defendants' use of their CENTERSQUARE mark constitutes willful, deliberate, and intentional trademark infringement.

34. Defendants' unauthorized use of the CENTERSQUARE mark in interstate commerce as described above constitutes trademark infringement under 15 U.S.C. § 1114(1) and has caused and is likely to continue to cause consumer confusion, mistake, or deception.

35. As a direct and proximate result of Defendants' trademark infringement, CenterSquare has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

36. Defendants' acts of infringement will cause further irreparable injury to CenterSquare if Defendants are not restrained by this Court from further violation of CenterSquare's rights. CenterSquare has no adequate remedy at law.

37. Defendants' infringement is willful, and for this reason and others, this matter should be deemed an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling CenterSquare to attorneys' fees and costs.

38. CenterSquare is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action pursuant to 15 U.S.C. §§ 1114, 1116, and 1117, together with prejudgment and post-judgment interest.

### COUNT II: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

40. CenterSquare alleges federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

41. Defendants' unauthorized marketing and sale of their products in interstate commerce using their CENTERSQUARE mark constitutes use of a false designation of origin or false representation that wrongfully and falsely designates Defendants' services as originating from, connected with, approved of, or sponsored by CenterSquare and constitutes the use of false descriptions or representations in interstate commerce. The actions of Defendants as alleged herein constitute intentional, willful, knowing, and deliberate unfair competition. For this reason and others, this matter should be deemed an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Plaintiff to attorneys' fees and costs.

42. As a direct and proximate result of Defendants' unfair competition, CenterSquare has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have and will continue to unfairly acquire income, profits, and goodwill.

43. Defendants' acts of unfair competition will cause further irreparable injury to CenterSquare if Defendants are not restrained by this Court from further violation of CenterSquare's rights. CenterSquare has no adequate remedy at law.

**COUNT III: ANTI-CYBERSQUATTING PIRACY ACT (15 U.S.C. § 1125(D))**

44. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

45. The ACPA prohibits bad faith registration, trafficking, or use of a domain name that is "identical or confusingly similar to" a trademark that is "distinctive at the time of registration of the domain name." 15 U.S.C. § 1125(d).

46. CenterSquare's is the owner of the CENTERSQUARE trademark, which is inherently distinctive.

47. When Defendants registered the centersquaredc.com domain name, CenterSquare's CENTERSQUARE trademark was a valid, distinctive trademark.

48. Defendants registered, trafficked in, or used the centersquaredc.com domain name that is nearly identical or confusingly similar to CenterSquare's trademark.

49. As shown above, Defendants' conduct demonstrates that it had a bad faith intent to profit from CenterSquare's trademark.

50. Defendants' registration and use of the centersquaredc.com domain name is likely to cause confusion, to cause mistake, and to deceive as to the origin, source, or sponsorship of the infringing domain name among the public.

51. Because of Defendants' cybersquatting, CenterSquare suffered and continues to suffer damage and injury to its business, reputation, and goodwill, with a loss of revenues and profits, in an amount yet to be determined and subject to a treble damages award pursuant to 15 U.S.C. § 1117(a).

52. Alternatively, Defendants' actions justify an award of statutory damages in an amount of $100,000 pursuant to 15 U.S.C. § 1117(d).

53. Defendants engaged in these activities knowingly, willfully, and deliberately. This is an exceptional case, which justifies an award of CenterSquare's attorneys' fees and costs.

### COUNT IV: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF TEXAS COMMON LAW

54. CenterSquare repeats and incorporates by reference all other paragraphs as if fully set forth here.

55. CenterSquare has a valid, legally protectable interest in the CENTERSQUARE marks. As described above, CenterSquare owns common law rights in and to the distinctive

CENTERSQUARE trademarks, which significantly predate any use of the CENTERSQUARE mark by Defendants.

56. Defendants used CenterSquare's CENTERSQUARE trademark in commerce in Texas in connection with their goods and services.

57. Defendants did not have CenterSquare's consent, permission, or license to use CenterSquare's trademarks, and Defendants' use is likely to cause confusion, to cause mistake, and to deceive as to the origin or source of Defendants' good and services, and/or to cause consumers to mistakenly believe that Defendants' goods and services are part of, or sponsored, endorsed, or approved by, or otherwise affiliated with CenterSquare.

58. As a direct and proximate result of Defendants' willful trademark infringement and unfair competition, CenterSquare has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have and will continue to unfairly acquire income, profits, and goodwill.

59. The foregoing acts constitute trademark infringement and unfair competition in violation of Texas common law, and such acts have caused, and will continue to cause, CenterSquare to suffer damages.

60. Defendants' acts of unfair competition will cause further irreparable injury to CenterSquare if Defendants are not restrained by this Court from further violation of CenterSquare's rights. CenterSquare has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, CenterSquare prays for the following relief:

A. Entering judgment in favor of CenterSquare on all causes of action set forth herein;

B. Entering a judgment that CenterSquare's registered CENTERSQUARE trademark has been and continues to be infringed by Defendants in violation of 15 U.S.C. § 1114(1);

C. Entering a judgment that Defendants' use of their CENTERSQUARE trademark constitutes federal unfair competition in violation of 15 U.S.C. § 1125(a);

D. Entering a judgment that Defendants violated the ACPA, 15 U.S.C. § 1125(d);

E. Entering a judgment that Defendants' use of their CENTERSQUARE trademark constitutes trademark infringement and unfair competition in violation of Texas common law;

F. Permanently enjoining and restraining Defendants and each of their agents, representatives, employees, officers, attorneys, successors, assigns, affiliates, licensees, and any persons in privity or active concert or participation with any of them from using the trademark CENTERSQUARE, with or without its accompanying logo or any other designation, alone or in combination with other words or symbols, as a trademark or trade name component or otherwise, to market, advertise, distribute, or identify Defendants' products where that designation would create a likelihood of confusion, mistake or deception with CenterSquare's CENTERSQUARE mark;

G. Pursuant to 15 U.S.C. § 1116(a), directing Defendants to file with the Court and serve on CenterSquare within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

H. Pursuant to 15 U.S.C. § 1118, requiring that Defendants and all others acting under Defendants' authority, at their cost, be required to deliver up and destroy all devices, literature, advertising, labels, and other material in their possession bearing the infringing designation;

I. Pursuant to 15 U.S.C. § 1119, enjoining the Director of the United States Patent and Trademark Office from issuing to Defendants any trademark registration for their CENTERSQUARE mark or any combination of words or symbols that would create a likelihood of confusion, mistake, or deception with CenterSquare's mark, including, but not limited to, Serial No. 98423593, or ordering cancellation of any such registrations previously granted to Defendants;

J. Ordering Defendants to transfer the centersquaredc.com domain name to CenterSquare;

K. Awarding CenterSquare statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d), if elected;

L. Awarding CenterSquare all damages it sustained as the result of Defendants' acts of infringement and unfair competition, said amount to be trebled, together with prejudgment interest, pursuant to 15 U.S.C. § 1117;

M. Awarding CenterSquare all profits received by Defendants from sales and revenues of any kind made as a result of their willful and intentional infringing actions, said amount to be trebled, after an accounting, pursuant to 15 U.S.C. § 1117;

N. Declaring that this is an "exceptional" case under the Lanham Act and awarding CenterSquare its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and;

O.     Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

CenterSquare demands a jury trial of all issues so triable.

Dated: November 21, 2024.

CM LAW PLLC

/s/ Mishell B. Kneeland
Mishell B. Kneeland
Texas Bar No. 24038256
mkneeland@cm.law
(512) 910-5463
Cheryl E. Diaz
Texas Bar No. 05804350
cdiaz@cm.law
(469) 733-7377

National Litigation Support Center
13101 Preston Rd. Ste. 110-1510
Dallas, Texas 75240

*Attorneys for Plaintiff*
*CenterSquare Investment Management LLC*